BACON, (UNITED STATES v.) See Case No. 14,492.

BACON, (VOWELL v.) See Case No. 17,018.

---

## Case No. 716.

### In re BADENHEIM et al.·

[15 N. B. R. 370.]

Circuit Court, S. D. Mississippi. Nov., 1876.

BANKRUPTCY — ASSIGNMENT — JUDGMENT LIENS— PRIORITY—COMMENCEMENT OF PROCEEDINGS.

[1. A judgment lien operates only upon such property as is subject to levy and sale under legal process issued for its payment, and therefore does not operate upon property which is at the time in the possession of the sheriff under attachments. Such attachments are dis-

---

[1] [Reported by William W. Story, Esq.]

solved, not by the commencement of proceedings in bankruptcy, but by the adjudication, and the deed of assignment relates back to such commencement, and divests all right and title in the bankrupts, and in the sheriff, and vests them in the assignee, as of that date, but at that very moment the judgment lien ceases, so there is no time at which it attaches. In re Loder, Case No. 8,458, followed.]

[See Hudson v. Adams, Case No. 6,832.]

[2. The act of 1828, (4 Stat. 278,) adopting the state process laws, does not make a judgment without process a lien, from its rendition, for the lien derives its force only from the process.]

[3. Property held by purchasers from the bankrupts in fraud of the bankrupt act of 1867, (14 Stat. 517,) at the time of the judgment, is subject to the judgment lien, for the legal title has not passed, and the proceeds of such property in the hands of the assignee are alike liable.]

[4. Any other property which the bankrupts held after the rendition of the judgment, and before the commencement of the proceedings in bankruptcy, and which might at the time have been levied upon and sold for the payment of the judgment, is subject to the judgment lien.]

[In bankruptcy. Petition by Schaeffer & Co. against the assignee in bankruptcy of H. Badenheim & Co. to have certain funds applied to the payment of a judgment obtained prior to the commencement of proceedings in bankruptcy. Denied in part.]

HILL, District Judge. The question now presented arises upon the petition of Schaeffer & Co., against the assignee, to have applied to the payment of a judgment obtained by petitioners against the survivors of said firm, prior to the commencement of proceedings in bankruptcy, out of the funds derived from the proceeds of the sales of said estate made by the assignee and out of funds collected from purchasers of the goods belonging to said firm, and held void by the judgment of this court, and upon which it is alleged the judgment of petitioners, obtained in the circuit court of the United States for this district, operated as a lien. The answer of the assignee sets up as a defense: 1. That no such judgment as is set out in the petition is in existence. 2. That all the property sold by the assignee, the proceeds of which are sought to be applied to the payment of petitioner's judgment, was at the time of the rendition of said judgment, and up to the commencement of proceedings in bankruptcy, in the possession of the sheriff of Warren county, under and by virtue of seizures under attachments sued out against said bankrupts in the circuit court of Warren county, and that there was no time from the rendition of said judgment at which said property was liable to seizure and levy under an execution issued upon said judgment, and therefore no lien ever attached to said goods for the satisfaction of petitioners' demand.

The issuance and seizure under said attachments is admitted. So that upon that point there is no question of fact disputed. I am satisfied, from an inspection of the record, that before the commencement of proceedings in bankruptcy there was such a judgment as is described in the petition, and that it did operate as a lien upon such property belonging to the bankrupts, the defendants to the judgment, as was then liable to seizure and sale under an execution issued to collect the same or any other property which they assigned, and was so liable before the commencement of proceedings in bankruptcy, which leaves for determination the other point of defense, and that is whether any of the property described, the proceeds of which are sought to be applied to the payment of petitioners' judgment, was so liable. I think it well settled that a judgment lien only operates upon such property as is subject to levy and sale under legal process issued for its payment. A careful consideration of this rule, as applied to the property seized and held by the sheriff in this case, convinces me that there was no time when it was so liable. It is true that, by operation of law, these attachments were dissolved as soon as the proceedings in bankruptcy were commenced. The commencement of the bankrupt proceedings did not of itself have that effect, but the adjudication did; and the deed of assignment by force of the law related back to the commencement of the proceedings, and divested all the title and right of bankrupts, and also the qualified right and title vested in the sheriff by means of the seizure and levy under the attachments, and vested them in the assignee; but the very moment this was done the judgment lien ceased, so that there was no time at which it attached. This position is fully sustained by Judge Benedict, in the case of Lewis B. Loder, bankrupt, [In re Loder, Case No. 8,458.] The learned counsel for the petitioners insists that this is founded upon the statutes of New York, by which nothing short of a levy, under legal process for the satisfaction of the judgment, creates a lien upon personal property; but I am satisfied the point upon which the case turned was, that the seizure under the attachment being first made held the property free from the lien under the execution up to its dissolution by the bankrupt proceedings, so that there was no time at which the lien under the execution could attach. I am aware of no adjudicated case holding the contrary doctrine. It is also urged by the petitioners' counsel that the act of 1828, [4 Stat. 278,] adopting the state process laws, makes the judgment from its rendition without process a lien; but the adjudications holding this judgment to be a lien placed it as deriving its force from the process, and consequently if the property cannot be reached by the process, the lien does not exist; it is this liability that creates it.

I am satisfied that the proceeds of the property so held under these attachments are not

liable to the payment of petitioners' judgment. But any property that was sold by the bankrupts and held by parties purchasing in fraud of the bankrupt law, [Act March 2, 1867; 14 Stat. 517,] and in existence, and in the hands of such fraudulent vendees at the rendition of the judgment, was subject to a lien for its payment and for the reason that the legal title did not pass from the bankrupts. This being so, the proceeds stand in the place of the property and are alike liable. So with regard to any other property which the bankrupts held after the rendition of the judgment and before the commencement of the proceedings in bankruptcy against them, and which might at the time have been levied upon and sold for the payment of the judgment. To ascertain what fund may be now or hereafter in the hands of the assignee or other custodian of said estate, the petitioners may have a reference to the master.